# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

ROSEMARY DUVERGLAS,            :

                Plaintiff,

    -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.     :

Case No. 3:07-cv-378

District Judge Walter Herbert Rice
Chief Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a.

With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national

3

economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI in July, 2002, alleging disability from November 1, 2001, due to Graves' disease. (Tr. 52-54; 195-97; 74-83). Plaintiff's applications were denied initially and on reconsideration. (Tr. 32-35, 37-39; 199-202, 204-07). A hearing was held before Administrative Law Judge James Knapp, (Tr. 210-44), who determined that Plaintiff was not disabled. (Tr. 12-24). The Appeals Council denied Plaintiff's request for review, (Tr. 6-8), and Judge Knapp's decision became the Commissioner's final decision.

Plaintiff filed an action in this Court seeking judicial review of the Commissioner's decision. *Duverglas v. Commissioner of Social Security,* No. 3:04cv338 (filed Sept. 20, 2004)(Doc. 2); *See* Tr. 321-42. On May 24, 2005, Magistrate Judge Sharon L. Ovington issued a Report and Recommendations, ("Report"), recommending that the matter be remanded to the Commissioner for further administrative proceedings. (Doc. 17). In the absence of Objections to Judge Ovington's Report, District Judge Thomas M. Rose subsequently adopted the Report and remanded the matter. (Doc. 18). While the matter was pending on judicial review, Plaintiff filed another application for benefits which was approved with the established disability onset date of July 22, 2005. *See* Tr. 301; 535-36. That application is not before the Court. However, the issue before Judge Knapp on remand, as well as before this Court, is whether Plaintiff was disabled for the closed period of November 1, 2001, the onset date Plaintiff alleged in her July, 2002, applications, and July 22, 2005.

On remand, Judge Knapp held a hearing, (Tr. 526-67), and again found that Plaintiff was not disabled. (Tr. 298-317). The Appeals Council denied Plaintiff's request for review, (Tr. 245-47), and Judge Knapp's decision became the Commissioner's final decision.

In determining that Plaintiff was not disabled, Judge Knapp found that during the

4

period prior to July 22, 2005, Plaintiff has severe hyperthyroidism and, as of May, 2005, a depressive disorder, but that she did not have an impairment or combination of impairments that met or equaled the Listings. (Tr. 315, findings 3, 4). Judge Knapp also found that prior to July 22, 2005, Plaintiff had the residual functional capacity to perform a limited range of light work. *Id.,* finding 6; Tr. 316, finding 8. Judge Knapp then used sections 202.21 and 204.00 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony concluded that prior to July 22, 2005, there was a significant number of jobs in the economy that Plaintiff was capable of performing. *Id.,* findings 12, 13. Judge Knapp concluded that prior to July 22, 2005, Plaintiff was not disabled and therefore not entitled to benefits under the Act. (Tr. 317).

In her May 24, 2005, Report, Judge Ovington reviewed and summarized the medical evidence as follows:

> M. Hussain Jawadi, M.D., an endocrinologist, treated [Plaintiff] for Graves' disease and hyperthyroidism beginning on April 12, 2002. (Tr. 124). In a letter dated April 22, 2002, Dr. Jawadi explained that [Plaintiff] had been referred to him for evaluation of a thyroid problem and that she had experienced symptoms of hyperthyroidism "for a while now." (Tr. 127). The results of his examination of [Plaintiff] included "some lid lag, mostly on the left side. She has a huge goiter and the remaining examination was normal except for some fine tremors of the hand and exaggerated reflexes." *Id.* Results of thyroid function tests were consistent with hyperthyroidism and were severe enough to point towards Graves' disease. *Id.* Dr. Jawadi prescribed Inderal and PTU. (Tr. 126-27).
>
> In September 2002 a reviewing physician for the Ohio Bureau of Disability Determinations ("Ohio BDD"), Robert E. Norris, M.D., noted that [Plaintiff] has Graves' Disease with hyperthyroidism. Dr. Norris wrote, "This disease can account for all of her symptoms including dyspnea[4] .... [She] is getting appropriate treatment...." (Tr.

---

[4] Dyspnea refers to "[a]ir hunger in labored or difficulty breathing...." Taber's Cyclopedic Medical Dictionary at 627.

143).    Dr. Norris checked a box indicating his opinion that [Plaintiff's] impairment was not severe.  *Id.*

In December 2002 [Plaintiff] was admitted to the hospital for a two-day stay.  (Tr. 173).  Dr. Jawadi reported, "Patient was admitted to hospital with possibility of thyrotoxic storm, with tachycardia, nausea and vomiting...." (Tr. 173).  Thyrotoxic or thyroid storm refers to a "rare but often life-threatening medical emergency resulting from untreated hyperthyroidism....  It may begin when a patient with hyperthyroidism suffers a second illness (e.g., an infection), after thyroid gland surgery, or after withdrawal from antithyroid drug treatment...." Taber's Cyclopedic Medical Dictionary at 2099; *see* Merck Manual at 90.  After testing and treatment with medication, detailed in Dr. Jawadi's discharge summary, Dr. Jawadi wrote, "Patient showed remarkable recovery in regard to nausea and vomiting, and also for shortness of breath...." (Tr. 173).

In August 2003 Dr. Jawadi examined [Plaintiff] upon her admission to the hospital Emergency Room.  He noted that she was 44 years old and that she reported symptoms of "severe shortness of breath, palpitations, not feeling well.  The patient is known to have thyrotoxicosis, hyperthyroidism." (Tr. 178).  He also noted, "She has not been very compliant in the past with taking her medicines, which include PTU and Inderal, however, she has been taking medicines regularly.  She still had been complaining of shortness of breath and hyperventilation, and feeling sick." (Tr. 178).  Dr. Jawadi explained his assessment and treatment plan as follows: "The patient has toxicosis, inadequately treated, even though she says she is compliant at taking medicines.  We have increased the dose of it.  She is not in thyrotoxic storm at this time....  Her dose of the PTU will be increased,... and Inderal dose will also be increased....  She was placed on medicine by Dr. Uddin, which includes [digoxin]....  She was also given Ativan....  The patient will be closely monitored." (Tr. 179).

On September 5, 2003, Dr. Jawadi reviewed his records regarding [Plaintiff] including records of her recent office visit.  He reported that he had treated [Plaintiff] for the last one to one and one-half years.  He further explained:

> [T]he first time I saw her was on 8/12/2002.  She came to me for evaluation of Graves' disease and thyrotoxicosis.  She was investigated and confirmed to have Graves' disease.  She has been followed on

and off since then.  She was recently hospitalized ... with exacerbation of her Graves' disease and shortness of breath.

On examination her vital signs are normal. Her examination was consistent with Graves' disease. She showed some improvement in her symptoms and signs of this problem.

At this point, I do not believe the patient can be employable, because she [has] moderate to severe Graves' disease with thyrotoxicosis and she has all the symptoms of it.  She has been complaining of increasing tiredness, because her disease in not under control at this time yet.  there may have been some degrees of noncompliance with her medicines in the base, bu[t] lately she has been taking her medicines regularly.  Her thyrotoxicosis has not come under control yet hopefully in the next few months it will be.  I would make the recommendation that she should continue her medicines which she is taking at this time and have close follow-up of her blood test levels and her examinations.

Again, as I mentioned, at this point she is not able to function in a productive capacity to earn decently. The question would be whether she is disabled for the rest of her life to be on Social Security and is not on disability at this time.  I will be happy to reevaluate her in the next few months to make that judgment.

(Tr. 169).  Dr. Jawadi included the following opinions in a Physical Assessment for Work-Related Activities form he completed in September 2003: occasional lifting of 1-5 pounds; total standing/walking of 2 hours during an 8-hour day due to shortness of breath. (Tr. 180).  Although Dr. Jawadi opined that [Plaintiff] had no ability to work, he parenthetically noted "now" next to his opinion. (Tr. 180).

In November 2003 [Plaintiff] saw Dr. Jawadi, who observed that [Plaintiff] had an enlarged thyroid. (Tr. 188). Dr. Jawadi's progress notes indicate that [Plaintiff] was scheduled for thyroid surgery but further indicate[d], "she does not want thyroidectomy."  (Tr. 188). Dr. Jawadi noted that [Plaintiff] "is scared for surgery...." (Tr. 188),

7

and that she "would rather take meds. Her compliance is ??..." *Id*

> On November 21, 2003, Khairat U. Ahmed, M.D. of the Community Hospital, wrote a letter explaining that [Plaintiff] had been "a patient at this facility since March 4, 2003 with a Diagnosis of Grave's [sic] Disease, Thyrotoxicosis, and underlying Anxiety." (Tr. 189). Dr. Ahmed briefly described her initial visit and symptoms, and that she had "been seen on occasion in our office as well as by Dr. Jawadi...." (Tr. 189). Dr. Ahmed opined that [Plaintiff] "is considered disabled from gainful employment for the next one to two years but her condition is treatable and should improve with appropriate medical treatment." (Tr. 189).

*Duverglas v. Commissioner*, No. 3:04cv338 (Doc. 17 at 8-11); *see* Tr. 330-33.

In recommending the matter be remanded, a recommendation which Judge Rose adopted, Judge Ovington essentially determined that the Commissioner improperly rejected treating physician Dr. Jawadi's opinion. Judge Ovington recommended that the matter be remanded for the purpose of obtaining the opinion of an independent medical source or a medical advisor.

On remand, additional medical evidence became a part of the record. That evidence indicates as follows.

On January 9, 2006, Dr. Ahmed reported that Plaintiff had been a patient at Community Hospital Health Care Center since April 8, 2003, and that her illnesses included Graves' Disease, hypothyroidism, hypertension, depression, dysfunctional uterine bleeding, and anemia. (Tr. 399-401). Dr. Ahmed also reported that Dr. Jawadi has been managing Plaintiff's thyroid problem, she underwent a thyroidectomy in August, 2004, which Dr. Demeter performed, she was now taking medication for hypothyroidism, her hypertension started in September, 2004, and that she had headaches and depression. *Id.* Dr. Ahmed noted that Plaintiff was seeing Dr. Vishnupad for depression, her thyroid condition seemed well-controlled with medication since surgery, her main problem was depression, and that she would not be able to acquire or maintain a job at present. *Id.*

8

Dr. Ahmed opined that Plaintiff was able to lift/carry 1-5 pounds frequently and 6-10 pounds occasionally, stand/walk for 4 hours in an 8-hour workday and for 1 hour without interruption, and sit for 6 hours in an 8-hour day and for 3 hours without interruption. *Id.*

On April 4, 2007, Barbara Ripley, Plaintiff's counselor at Family Service Agency of Clark and Champaign Counties, reported that she first assessed Plaintiff on October 20, 2004, after Dr. Uddin of the Community Hospital Health Care Clinic referred Plaintiff for evaluation. (Tr. 265-66). Ms. Ripley also reported that Plaintiff reported that she had undergone a thyroidectomy and since that time had experienced a "personality change, including distortion in her sense of taste and the sound of her voice, very slow speaking, retardation in physical movements, slow thought processing, tearfulness, insomnia, hopelessness, and weight loss of 14 pounds." *Id.* Ms. Ripley noted that Plaintiff's diagnosis was major depressive disorder, moderate, that in treatment Plaintiff began to work on some future planning, developing some goals, and increasing her social activities, that her depressive symptoms decreased significantly although her sleeplessness continued, and that at the last appointment in April, Plaintiff agreed to a referral to a psychiatrist. *Id.*

The medical advisor (MA) testified at the hearing that Plaintiff's thyroid impairment did not satisfy the Listings, that from April, 2002, through the time of her surgery and for a couple of months after surgery, Plaintiff would be restricted to light levels of work and not have a lot of stress, that once the thyroid is controlled there would be no restrictions on the basis of the thyroid alone. (Tr. 541-52). The MA also testified that the record did not reflect any end organ disease as a result of Plaintiff's hypertension and that most of the time Plaintiff's hypertension was well-controlled. *Id.*

Plaintiff alleges in her Statement of Specific Errors that the Commissioner erred by

9

improperly weighing the evidence by relying on the fact that she was not compliant with prescribed treatment and by considering that in determining that she was not entirely credible, by rejecting Dr. Jawadi's opinion, and by giving significant weight to the MA's opinion.

Plaintiff essentially argues that there is no basis in the record to support Judge Knapp's conclusion that she was poorly compliant. While Judge Knapp did not base his conclusion that Plaintiff was not disabled entirely on her non-compliance, he did consider it as a factor in determining that she was not disabled. *See, e.g.,* Tr. 311.

Contrary to Plaintiff's position, the record amply supports Judge Knapp's conclusion with respect to Plaintiff's non-compliance. For example, in December, 2002, Dr. Jawadi noted that Plaintiff had missed her office appointment and that he was not sure she was taking her medication. (Tr. 174). Plaintiff failed to keep appointments with Dr. Jawadi in April and June, 2003, (Tr. 154, 156), and in September, 2003, Dr. Jawadi reported that he had followed Plaintiff "off and on" and that there was a time when she did not come for follow-up. (Tr. 169). In addition, the record reflects that Plaintiff ran out of her medications before she requested refills for the prescription , (Tr. 154, 155), that Dr. Jawadi noted that Plaintiff had been non-complaint with her medications, (Tr. 169), and that in November, 2003, Dr. Jawadi again questioned Plaintiff's compliance with recommended treatment. (Tr. 187; 188). Finally, the MA testified that the record contained documentation of Plaintiff's non-compliance and her declination to have the standard treatment for Graves' disease. (Tr. 543-46).

Contrary to Plaintiff's argument, the Commissioner did not err by failing to properly analyze her failure to follow treatment according to requirements of 20 C.F.R. § 404.1530 and Social Security Ruling 82-59 (SSR). Both the Regulation and the SSR which Plaintiff relies on apply to

the failure by individuals who have a disabling impairment and who fail to follow prescribed

treatment:

> **§ 404.1530 Need to follow prescribed treatment.**
>
> (a) What treatment you must follow. *In order to get benefits*, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.
>
> (b) When you do not follow prescribed treatment. If you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits.

20 C.F.R. § 404.1530 (emphasis supplied).

**TITLES II AND XVI: FAILURE TO FOLLOW
PRESCRIBED TREATMENT**

SSR 82-59

> **INTRODUCTION**: Individuals with a *disabling impairment* which is amenable to treatment that could be expected to restore their ability to work must follow the prescribed treatment to be found under a disability, unless there is a justifiable cause for the failure to follow such treatment. This policy statement discusses failure to follow prescribed treatment, explains in detail the requirements necessary for such a finding, explains the consequences of such action, and illustrates examples of justifiable causes for "failure."
>
> **POLICY STATEMENT**: An individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the Social Security Administration (SSA) determines can be expected to restore the individual's ability to work, cannot by virtue of such "failure" be found to be under a disability. (See discussion below for title XVI "blindness" cases.)

Social Security Ruling 82-59 (Nov. 3, 1981)(1982 WL 31384) (emphasis in original).

The Commissioner did not find that Plaintiff has a disabling impairment. Therefore,

the Commissioner was not required to analyze her non-compliance pursuant to 20 C.F.R. § 404.1530

11

or SSR 82-59.

Plaintiff also argues that the Commissioner erred by rejecting Dr. Jawadi's opinion.

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

The reason for the "treating physician rule" is clear: the treating physician has had a greater opportunity to examine and observe the patient. *See, Walker v. Secretary of Health and Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992). Further, as a result of his or her duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians. *Id.* (citation omitted).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

In rejecting Dr. Jawadi's opinion, as well as Dr. Ahmed's opinion, that Plaintiff was disabled, Judge Knapp determined that Dr. Ahmed's opinion was internally inconsistent, and that both physicians' opinions were not supported by the objective evidence, and inconsistent with the other evidence of record. For example, Judge Knapp noted that Dr. Jawadi reported in August, 2002, that Plaintiff had no limitations on her ability to perform sustained work activity. (Tr.125). In addition, Dr. Jawadi primarily reported Plaintiff's subjective complaints rather than objective clinical findings. *See, e.g.,* Tr. 169, 182-86. Additionally, Judge Knapp determined that Dr. Jawadi's opinion was inconsistent with the other evidence of record particularly the MA's opinion. Specifically, Judge Knapp found that the MA testified at length as to his detailed analysis of the medical evidence and that his opinion comported well with the evidence as well as with the general nature of Graves' disease. (Tr. 312). Indeed, as noted above, the MA testified as to specific incidents where the record questioned Plaintiff's compliance with recommended treatment. In

13

addition, the MA essentially noted the general lack of objective evidence supporting Dr. Jawadi's opinion.  Finally, as Judge Knapp noted, Dr. Jawadi's opinion was inconsistent with the reviewing physician's opinion.  (Tr. 142-43).  Accordingly, the Commissioner had an adequate basis for rejecting Dr. Jawadi's opinion and for, instead, relying on the MA's opinion.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence.  *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982).  The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury."  *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939).  The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

September 29, 2008.

*s/ Michael R. Merz*
Chief United States Magistrate Judge

## NOTICE  REGARDING  OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).